## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **TONIA OGBEIDE,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | **CIV-15-** 533-M |
| **v.** | | ) | |
| | | ) | |
| 1. | **ASF OF EDMOND, L.L.C., d/b/a** | ) | |
| | **BRADFORD VILLAGE, and** | ) | |
| 2. | **BROOKDALE SENIOR LIVING** | ) | |
| | **COMMUNITIES, INC., a/k/a** | ) | |
| | **BROOKDALE SENIOR LIVING,** | ) | |
| | **d/b/a BRADFORD VILLAGE,** | ) | |
| | | ) | **ATTORNEY LIEN CLAIMED** |
| | **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Tonia Ogbeide, and for her Complaint against the Defendants herein alleges and states as follows:

### PARTIES

1.     The Plaintiff, Tonia Ogbeide, is an adult Black female residing in Oklahoma County, Oklahoma.

2.     The Defendants are:

a.     ASF of Edmond, L.L.C., d/b/a Bradford Village, an entity doing business in Oklahoma County, Oklahoma; and

b.     Brookdale Senior Living Communities, a/k/a Brookdale Senior Living, d/b/a Bradford Village, an entity doing business in Oklahoma County, Oklahoma.

-1-

## JURISDICTION AND VENUE

3.      Plaintiff's causes of action are based on (a) race and national origin discrimination in violation of 42 U.S.C. § 1981; (b) interference with and retaliation for use of leave under the Family Medical Leave Act ("FMLA"), and (c) worker's compensation retaliation in violation of state law.

4.      Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.   This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5.      All of the actions complained of herein occurred in Oklahoma County, Oklahoma and the Defendants may be served in Oklahoma County, Oklahoma.  Oklahoma County is located within the Western District of Oklahoma.  Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6.      Plaintiff, an American citizen, is Black and was born and lived in Nigeria until 1993.

7.      Plaintiff was hired by Defendants in or around January 2009 as a Licensed Practical Nurse ("LPN") on the night shifts.

8.      In or around the Summer of 2013, Brandy Ratcliff, who is White, became the Administrator for Defendants' Bradford Village location.  Ratcliff treated Black employees

less favorably than White employees. For instance, Ratcliff would not respond to Black employees who said good morning to her, instead speaking only to White employees.  And, Ratcliff would hold Black employees to more stringent standards, nitpicking their performance.

9.      Shortly after Ratcliff's arrival at Defendants' facility, Plaintiff complained to her about LPN Rich (last name unknown, a White male).  Plaintiff stated that Rich was speaking to Plaintiff in a demeaning manner and treating her as a subordinate, despite their equal positions. Plaintiff told Ratcliff that she believed this was due to her race.  Ratcliff dismissed Plaintiff's complaint, replying that Plaintiff was just tired and needed to go home and rest.

10.     On or about the evening of November 23, 2013, Plaintiff was walking in to work to begin her shift, when she slipped on a patch of ice and fell to the ground.  Plaintiff was unable to stand up and called Defendants' office on her cell phone for assistance before losing consciousness.  Plaintiff was transported to the Emergency Room, where she was diagnosed with a fractured right ankle and taken off work per her doctor's orders.

11.     Plaintiff completed an incident report and filed an uncontested workers' compensation claim against Defendants for her injuries sustained in the fall.

12.     When Plaintiff was completing the incident report, Ratcliff questioned Plaintiff about her national origin, asking questions about whether Nigeria was like Cameroon, in that she had heard there were no facilities to care for the elderly.

-3-

13.     Plaintiff's foot and ankle were put in a cast, and she was required to use crutches.  Plaintiff was given restrictions of no climbing, kneeling, crawling, bending, stooping, or driving until further notice.  Additionally, Plaintiff was instructed to change positions as needed when standing, sitting or walking and to ice and elevate her ankle every two (2) hours as needed. She notified Defendants of her medical restrictions.  She was told by her workers compensation adjuster that her restrictions could not be accommodated and she would need to remain off work until her restrictions were lifted or reduced.

14.     Plaintiff was contacted by Human Resources Manager Lisa (last name unknown), who is White, and instructed to call a third-party provider for FMLA coverage. Plaintiff did as instructed, and her doctor completed and returned the necessary paperwork, requesting she be provided leave until on or about January 22, 2014.

15.     While Plaintiff was off work on FMLA leave, she continued to provide the paperwork from her doctors, including changes in her restrictions and updates on her condition to Lisa.

16.     Plaintiff's no driving restriction was removed about six (6) weeks after her injury, i.e., on or about January 3, 2014.  Following this change in restrictions, Lisa told Plaintiff to return to work on or about January 13, 2014, despite having FMLA leave through January 22, 2014.

17.     Upon her return to work on or about January 13, 2014, Lisa told Plaintiff that she would be reassigned to the day shift instead of the night shift, but there would be no

change in pay.  However, this was not the case because Plaintiff was not paid the night shift differential she had previously received.

18.     On or about January 15, 2014, Defendants offered Plaintiff a temporary job assignment through their "Return to Work Transitional Duty Program."  Defendants' policy states that transitional duty assignments may last up to 180 days.  Plaintiff's position under this program was to work in the Nursing 020 Department, entering incident reports, filing, and completing physician orders and audit charts. Such position complied with Plaintiff's restrictions.

19.     Following her return to work, Plaintiff underwent physical therapy for her injury at Defendants' facility.

20.     In or around early January 2014, Cindy (last name unknown, who is White) became the Director of Nursing ("DON") at Plaintiff's facility.  Cindy treated non-White employees less favorably than White employees, and on one occasion asked Plaintiff where she was from in an accusatory manner.

21.     On or about January 24, 2014, Plaintiff's restrictions were reduced to "limited" climbing, kneeling, crawling, bending, stooping, changing position as needed and icing and elevating her ankle every 2 hours as needed.  These restrictions were given to Plaintiff again at her doctor's appointment on or about February 18, 2014. And, on or about February 24, 2014, Plaintiff's doctor sent a letter to Plaintiff's workers compensation case manager stating Plaintiff could resume normal job description activities, but perform only a half day

climbing, kneeling, crawling, bending, stooping, and that Plaintiff would need to change position as needed and ice and elevate her ankle every 2 hours as needed

22.     On or about March 3, 2014, Plaintiff called Defendants and spoke with Cindy to notify her that Plaintiff would need the day off work due to the pain in her hip associated with her on the job injury. Cindy told Plaintiff she would need to write a statement explaining her absence the following day when Plaintiff returned to work.

23.     On or about March 4, 2014, Plaintiff wrote a statement as instructed by Cindy and submitted the statement to Lisa.

24.     On or about March 10, 2014, Plaintiff was scheduled as a Certified Nursing Aid ("CNA"), an even more physically strenuous position than that of an LPN, for five (5) days the following week. That same day, Plaintiff spoke with Lisa regarding the CNA assignment and stated that she was unable to perform the CNA duties due to her restrictions.

25.     And, based on her medical restrictions, Plaintiff called in absent for her next five (5) shifts where she was assigned to work as a CNA.

26.     The following two (2) weeks, Plaintiff was not given any shifts on the schedule.

27.     On or about March 25, 2014, Plaintiff had an appointment with her doctor, where she was cleared to return to her LPN duties. And, on or about March 28, 2014, Plaintiff hand-delivered a letter to Cindy, Ratcliff and Lisa, stating she had been cleared to resume her job duties as an LPN.

-6-

28.    Plaintiff was then berated by Cindy, who claimed that Plaintiff had been terminated for "no call/no show" for failing to come to work the week of March 10, 2014 (the week she was scheduled for CNA duties).  Plaintiff stated that she had called in as required.  In fact, Plaintiff asked to review the scheduling book where such calls are logged. Ratcliff retrieved the scheduling book, which showed that Plaintiff had called in daily as required.  Cindy then changed her position, stating that it did not matter that Plaintiff had called in as required, but that she was still terminated.  Ratcliff told Plaintiff she would be receiving a termination letter in the mail. However, Plaintiff has not received any such letter.

29.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I: 42 U.S.C. § 1981 - Race Discrimination and Harassment

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

30.    The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race and national origin discrimination.

31.    As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and other non-pecuniary losses.

32.    Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II: FMLA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

33.     The matters alleged above constitute interference with and retaliation for Plaintiff's use and/or attempted use of medical leave in violation of the Family Medical Leave Act.

34.     Plaintiff was entitled to medical leave because she required time off to care for herself due to serious health conditions (as set forth above) and worked for Defendants (i.e., entities with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

35.     Defendants interfered with and retaliated against Plaintiff for her use of time off.

36.     As set forth herein, Defendants' actions were in willful violation of the law. Defendants were aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

37.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendants' violation of the FMLA), attorney fees and costs.

## COUNT III:  WORKERS' COMPENSATION RETALIATION

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

38.     Defendants' actions, as described above, constitute retaliation in violation of the Oklahoma Workers' Compensation Act.

39.     Plaintiff sustained a job-related injury for which she could assert a claim for benefits under the Oklahoma Workers' Compensation Act.

40.     Defendants had knowledge of Plaintiff's work-related injury.  Thereafter, Defendants terminated Plaintiff's employment.

41.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

42.     Defendants' actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## PRAYER

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendants and assess compensatory damages including but not limited to backpay, future wages and other compensatory damages, together with pre- and post-judgment interest, costs, attorney's fees, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

**RESPECTFULLY SUBMITTED THIS <u>15th</u> DAY OF MAY, 2015.**

s/Jana B. Leonard

**LEONARD & ASSOCIATES, P.L.L.C.**
**JANA B. LEONARD, OBA # 17844**
**EMILY VAN VOLKINBURG, OBA # 31744**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800     TELEPHONE**
**(405) 239-3801     FACSIMILE**
leonardjb@leonardlaw.net
emilyv@leoanardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED